139 Nev., Advance Opinion 40

IN THE SUPREME COURT OF THE STATE OF NEVADA

ORBITZ WORLDWIDE, LLC; ORBITZ
LLC; ORBITZ INC.; TRAVELSCAPE
LLC; TRAVELOCITY INC.; CHEAP
TICKETS INC.; EXPEDIA INC.;
EXPEDIA GLOBAL LLC; HOTELS.COM
LP; HOTWIRE INC.; BOOKING
HOLDINGS INC.; PRICELINE.COM
LLC; TRAVELWEB LLC;
TRAVELNOW.COM INC.; AGODA
INTERNATIONAL USA LLC; HOTEL
TONIGHT INC.; AND HOTEL
TONIGHT LLC,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
MARK R. DENTON, DISTRICT JUDGE,
Respondents,
   and
THE STATE OF NEVADA; MARK
FIERRO; AND SIG ROGICH,
Real Parties in Interest.

No. 85111

FILED

SEP 28 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order denying a motion for summary judgment.

*Petition denied.*

Pisanelli Bice, PLLC, and Todd L. Bice, Las Vegas; Ballard Spahr LLP and Joel E. Tasca and David E. Chavez, Las Vegas,
for Petitioners Agoda International USA LLC, Booking Holdings Inc., Cheap Tickets Inc., Expedia Global LLC, Expedia Inc., Hotel Tonight Inc., Hotel Tonight LLC, Hotels.com LP, Hotwire Inc., Orbitz Inc., Orbitz LLC,

23-31817

Orbitz Worldwide, LLC, Priceline.com LLC, Travelweb LLC, Travelnow.com Inc., Travelocity Inc., and Travelscape LLC.

Bradley Arant Boult Cummings, LLP, and Anne Marie Seibel and Tiffany J. deGruy, Birmingham, Alabama,
for Petitioners Agoda International USA LLC, Booking Holdings Inc., Priceline.com LLC, and Travel Web LLC.

McDermott, Will & Emery LLP and Catherine A. Battin and Jon Dean, Chicago, Illinois,
for Petitioners Hotel Tonight Inc. and Hotel Tonight LLC.

Morgan, Lewis & Bockius LLP and Douglas W. Baruch and Elizabeth B. Herrington, Washington, D.C.,
for Petitioners Cheap Tickets Inc., Expedia Global LLC, Expedia Inc., Hotels.com LP, Hotwire Inc., Orbitz Inc., Orbitz LLC, Orbitz Worldwide, LLC, Travelnow.com Inc., Travelocity Inc., and Travelscape LLC.

Aaron D. Ford, Attorney General, and David J. Pope, Senior Deputy Attorney General, Carson City,
for Real Party in Interest the State of Nevada.

Clark Hill PLLC and Dominic P. Gentile, Michael Vincent Cristalli, and Mark S. Dzarnoski, Las Vegas,
for Real Parties in Interest Mark Fierro and Sig Rogich.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

---

[1]The Honorable Linda Marie Bell, Justice, recused herself and did not participate in the decision of this matter.

## OPINION

By the Court, CADISH, J.:

In this writ proceeding, we consider an issue of first impression regarding NRS 357.080(3)(b), which prevents a private plaintiff from maintaining an action under the Nevada False Claims Act (NFCA) if the action is based on the same allegations or transactions that are the subject of a civil action to which the State or a political subdivision is already a party. Specifically, we address whether NRS 357.080(3)(b) requires dismissal of a private NFCA action brought on behalf of the State, where a county brings a subsequent suit on its own behalf against the same parties based on the same allegations or transactions as the private action to establish liability. We conclude that NRS 357.080(3)(b) does not contain a sequencing requirement, and thus when applicable this statute requires dismissal of the private NFCA action even if the civil action on behalf of the State or a political subdivision was filed after the private action. We further conclude that when a civil action has been brought by or on behalf of a state governmental entity, NRS 357.080(3)(b) presents no bar to a separate private action on behalf of a different governmental entity, even where the two suits involve the same allegations or transactions. Applying this interpretation to the instant case, we deny the request for writ relief because, even assuming the private and governmental actions here involve the same allegations or transactions, the two actions are brought on behalf of two separate governmental entities. Petitioners have thus failed to demonstrate that the law requires the district court to dismiss this private action such that writ relief is warranted here.

SUPREME COURT
OF
NEVADA

(O) 1947A

## FACTS AND PROCEDURAL HISTORY

Real parties in interest Mark Fierro and Sig Rogich (collectively, relators) commenced a private action on behalf of real party in interest the State of Nevada against petitioners, all of whom are online travel companies (collectively, OTCs). Relators asserted a cause of action under the NFCA, alleging that OTCs knowingly avoided obligations to pay transient-lodging taxes[2] mandated by the Clark County Code and state law by engaging in a scheme to collect the tax from their customers based on a retail room rate but remit the tax to the county and State based on a lower, discounted room rate negotiated between OTCs and hotels.[3] In other words, relators alleged that OTCs negotiated with hotels to rent a room at a certain rate, called the wholesale rate; OTCs then marked up the price, called the retail rate, to customers. Relators allege that OTCs then calculated their transient-lodging tax obligation according to the wholesale rate, yet they collected from customers the transient-lodging tax obligation according to the retail rate and pocketed the difference. Following the procedure set forth in NRS 357.110, the Attorney General declined to intervene and permitted relators' action to proceed.

---

[2]NRS 244.3352(1) mandates that counties impose transient-lodging taxes. Transient-lodging taxes are based on the gross receipts received by transient-lodging establishments, as that term is defined, from their occupants. *Id.* These taxes are collected by the counties and apportioned between the counties and the State under applicable law. NRS 244.3354.

[3]As we explain below, this type of private lawsuit, on behalf of an allegedly defrauded government entity, is sometimes referred to as a qui-tam case.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

Over a year later, Clark County filed its own lawsuit against the same OTCs named in this qui-tam lawsuit, which OTCs removed to federal court. Clark County's lawsuit included several claims, all based on allegations that OTCs knowingly avoided payment of transient-lodging taxes owed to Clark County under county and state law by engaging in a scheme to collect a transient-lodging tax from its customers based on "the full retail price" charged to those customers but remit the same transient-lodging tax to Clark County based on "the discounted wholesale price" negotiated between OTCs and hotels.

Following the commencement of Clark County's lawsuit, OTCs moved for summary judgment on the NFCA claim in this private action. They argued that the government-action bar under NRS 357.080(3)(b) precluded the action from proceeding because, as relators conceded, the allegations and transactions that were the subject of the private action were now the subject of a separate civil action commenced by Clark County. Relators countered that the government-action bar did not preclude relators' action on behalf of the State, as the bar only applied to a private action that involved the same governmental entity and the same theories of liability as the separate governmental entity's action.

During a hearing on the motion, the district court raised whether NRS 357.080(3)(b)'s language creates a sequencing requirement, such that the statute precludes a private suit that involves the same allegations or transactions as a governmental entity's suit only if the private suit was instituted after the governmental entity's suit. Ultimately, the district court denied summary judgment on this basis. It found that Clark County's action was based on the same underlying allegations or transactions that are the subject of relators' private action. However, it

SUPREME COURT
OF
NEVADA

(O) 1947A

5

reasoned that the "already" language in NRS 357.080(3)(b) "contemplates first in time." Accordingly, the district court concluded that the government-action bar did not apply here because Clark County did not bring its action until after commencement of the private action; thus, it was "not 'already a party'" to its own action for purposes of the section.

Subsequently, the district court granted the relators' motion for leave to amend pursuant to a joint stipulation in which OTCs reserved the right to object to the amended complaint under NRS 357.080(3)(b). Relators' amendment sought to clarify that the original complaint encompassed recovery of transient-lodging taxes due to the State under the ordinances of each county in which they were imposed, rather than only Clark County. Thus, in the amended complaint, relators again asserted their NFCA claim on behalf of the State and included new allegations that OTCs had knowingly and improperly deprived the State of taxes owed to it pursuant to the codes of Clark, Washoe, Douglas, Lyon, and Nye counties, as well as state law, by remitting their transient-lodging taxes based on the lower negotiated room rate, rather than the higher retail room rate.

Before relators filed their amended complaint but after the joint stipulation, OTCs moved for reconsideration of the order denying summary judgment on the ground that the district court's interpretation of NRS 357.080(3)(b) conflicted with its plain language. They contended that the application of the statute depended merely on the existence of the two suits, regardless of sequence. OTCs also argued that relators' amended allegations extending the alleged tax-avoidance scheme to other Nevada counties did not sufficiently differentiate the private suit from the Clark County suit and, thus, did not overcome the government-action bar. In OTCs' view, the purported failure to pay the transient-lodging taxes,

SUPREME COURT
OF
NEVADA

(O) 1947A

6

regardless of where the tax was levied, relied on the same statewide statutory sources and the same alleged statewide unlawful practices. OTCs also argued that, regardless of the amendment, the bar continued to apply with respect to the alleged violations of Clark County's ordinances because those allegations overlapped the allegations in the Clark County action and showed that the two suits rested on the same allegations or transactions.

Objecting to reconsideration, relators argued that the amended complaint, in superseding the original, precluded reconsideration as to OTCs' attacks on the original complaint. Relators also contended that the amended complaint's inclusion of new allegations regarding transient-lodging taxes in multiple counties differentiated their suit from the Clark County suit and overcame the government-action bar. Following a hearing, the district court denied reconsideration without articulating a rationale. This writ petition followed.

## DISCUSSION

*We elect to entertain the petition for writ relief*

A writ of mandamus is available to correct clear error or an arbitrary or capricious exercise of discretion when there is no other plain, speedy, and adequate legal remedy.[4] *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see State v. Eighth Judicial Dist. Court (Anzalone)*, 118 Nev. 140, 146, 42 P.3d 233,

_____

[4]Although OTCs alternatively seek a writ of prohibition, to the extent that the government-action bar implicates a challenge to the district court's jurisdiction, we conclude that prohibition relief is not appropriate here, consistent with our analysis of mandamus relief. *See Goicoechea v. Fourth Judicial Dist. Court*, 96 Nev. 287, 289, 607 P.2d 1140, 1141 (1980) (holding that a writ of prohibition "will not issue if the court sought to be restrained had jurisdiction to hear and determine the matter under consideration").

237 (2002) (observing that writ-of-mandamus relief "is available to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station,' or to control manifest abuse of discretion" (quoting NRS 34.160)). "Writ relief is an extraordinary remedy that . . . only issue[s] at the discretion of this court." *Anzalone*, 118 Nev. at 146, 42 P.3d at 237. "[B]ecause an appeal from the final judgment typically constitutes an adequate and speedy legal remedy, we generally decline to consider writ petitions that challenge interlocutory district court orders denying motions to dismiss" or for summary judgment. *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558. Notwithstanding our general policy, however, we have elected to exercise our discretion and entertain a writ petition in situations where "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of [considering the petition]." *Id.* at 197-98, 179 P.3d at 559.

This petition raises purely legal questions regarding the effect of NRS 357.080(3)(b) where the government entity's suit was filed after the private action and the two at-issue lawsuits involve two distinct governmental entities. Additionally, the issues of first impression raised by this petition are of statewide importance. Because the NFCA authorizes private parties to recover fraudulently obtained government funds and return those funds to the public fisc, any interpretation of NRS 357.080(3)(b) touches on the private enforcement of a governmental entity's owed claims and a governmental entity's control over the manner in which private plaintiffs litigate false claims. Moreover, the interpretation of NRS 357.080(3)(b) at the early stages of litigation furthers judicial economy, as the statute presents a total bar to litigation in certain situations. Accordingly, we elect to exercise our discretion and entertain the writ

petition to answer whether NRS 357.080(3)(b) bars a private suit on behalf of a governmental entity where a different governmental entity subsequently sues the same parties based on the same allegations or transactions as the private suit.[5]

*The NFCA's government-action bar*

Modeled after the 1986 amendments to its federal counterpart, the NFCA aims "to expose and combat attempted fraud against the government." *Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559; *see also* NRS 357.040(1) (enumerating "acts" for which "a person" may be "liable to the State or a political subdivision"). In so doing, the NFCA allows the Attorney General or the Attorney General's designee to bring an action thereunder against any "person" who commits a prohibited "act" against the State or a political subdivision of the State and recover monetary damages, including treble damages. *See* NRS 357.040(1)(a)-(i), (2) (listing "acts" for which civil liability exists and available damages); NRS 357.070(1)-(2) (permitting Attorney General, or district or city attorney by designation, to bring cause of action under the NFCA).

At the same time, the NFCA authorizes so-called qui-tam actions by which "a private plaintiff . . . bring[s] an action . . . on his or her own account and that of the State or a political subdivision, or both the State and a political subdivision," for violations thereunder. *See* NRS 357.080(1);

---

[5]We are not persuaded by relators' argument that this writ petition is moot. Regardless of whether the amended complaint superseded the original complaint, the amended complaint did not substantively alter the interpretative issue concerning NRS 357.080(3)(b) presented in this petition. Thus, the amended complaint neither renders the legal issue abstract nor prevents us from granting effectual relief to the prevailing party.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

*see generally United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 997 n.1 (9th Cir. 2002) ("'Qui tam' is shorthand for [a] Latin phrase . . . . In practice the phrase means 'an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.'" (citations and italicization omitted)). Once brought, "no person other than the Attorney General or the Attorney General's designee may intervene or bring a related action pursuant to [the NFCA] based on the facts underlying the first [private] action."[6] NRS 357.080(2); *see generally Grynberg ex rel. United States v. Exxon Co., USA (In re Nat. Gas Royalties Qui Tam Litig.)*, 566 F.3d 956, 961 (10th Cir. 2009) (describing the analogous federal provision as the "first-to-file bar," which "functions both to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim").

NRS 357.080(3) nevertheless precludes certain qui-tam actions. The at-issue subsection, known as the government-action bar, limits private actions as follows:

> [a]n action may not be maintained by a private
> plaintiff pursuant to this chapter . . . [i]f the action
> is based upon allegations or transactions that are
> the subject of a civil action or an administrative

---

[6]If the Attorney General or the Attorney General's designee elects to intervene in the qui-tam action, then the private plaintiff must effectively cede control of the litigation over to the Attorney General or the Attorney General's designee. *See* NRS 357.110(3). But if, as occurred here, the appropriate official declines to intervene, "the private plaintiff may proceed with the action." NRS 357.110(2). The State did not provide any briefing in this writ proceeding, presumably because the Attorney General previously declined to intervene in the action.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

> proceeding for a monetary penalty to which the
> State or political subdivision is already a party.

NRS 357.080(3)(b); *see also United States ex. rel. Bennett v. Biotronik, Inc.,* 876 F.3d 1011, 1014 (9th Cir. 2017) (referring to "the 'government-action bar'" in the NFCA's counterpart under the federal False Claims Act). We have not yet had the occasion to interpret the scope of NRS 357.080(3)(b) in an analogous situation, and thus, we have made only general remarks regarding the provision. *See, e.g., Int'l Game Tech., Inc. v. Second Judicial Dist. Court,* 122 Nev. 132, 139, 127 P.3d 1088, 1094 (2006) (stating, without interpreting the statute, that "[g]enerally, a false claims action may not be maintained if administrative or court proceedings involving the same underlying facts and allegations were previously instigated").

OTCs argue that the district court clearly erred in interpreting the unambiguous language of NRS 357.080(3)(b) as containing a sequencing requirement. They focus on the district court's interpretation of the words "maintain" and "already," arguing the Legislature's decision to substitute "maintain" for the federal law's use of "bring" as to a private plaintiff's action supports that the two terms are not synonymous. Applying their interpretation, OTCs argue that NRS 357.080(3)(b) bars the private action here, even though the Clark County action came after the private action.

Relators counter that OTCs' interpretation of NRS 357.080(3)(b) as purportedly requiring dismissal of a private lawsuit on behalf of the State because a separate political subdivision filed a subsequent lawsuit on its own behalf premised on the same allegations or transactions conflicts with the plain language of the statute, which distinguishes between "the State" and "political subdivisions" of the State. They reason that because the two at-issue suits involve different state

SUPREME COURT
OF
NEVADA

(O) 1947A

11

governmental entities, NRS 357.080(3)(b) does not preclude relators' private action from proceeding.

The application of NRS 357.080(3)(b) to the undisputed facts is a question of statutory interpretation, which we review de novo. *In re Resort at Summerlin Litig.*, 122 Nev. 177, 182, 127 P.3d 1076, 1079 (2006). We enforce the plain meaning of an unambiguous statute. *see City of Reno v. Yturbide*, 135 Nev. 113, 115-16, 440 P.3d 32, 35 (2019), and strive to interpret sections "in harmony with the statute as a whole." *Branch Banking & Tr. Co. v. Windhaven & Tollway, LLC*, 131 Nev. 155, 158, 347 P.3d 1038, 1040 (2015). In determining the meaning of a statute, we give undefined words in the statute their "plain and ordinary meaning." *In re Resort at Summerlin Litig.*, 122 Nev. at 182, 127 P.3d at 1079. Further, when a statute has been modeled after a federal statute, we consider interpretation of the federal statute as "helpful" insight for our interpretation of the corresponding state law. *See Int'l Game Tech.*, 122 Nev. at 150, 127 P.3d at 1101. We resort to external sources or rules of statutory construction only in the event that ambiguity, or language that gives rise to more than one "reasonable" interpretation, exists in the statute. *See Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 731, 100 P.3d 179, 193 (2004).

*NRS 357.080(3)(b) may apply even where the qui-tam action precedes the State's or political subdivision's action*

The statutory-interpretation dispute here concerns how the words "maintain" and "already" relate to each other. While neither word is defined within the NFCA, under the common definition, "maintain" means to "continue (something)." *Maintain, Black's Law Dictionary* 1142 (11th ed. 2019); *see also American Heritage Dictionary* 1058 (5th ed. 2011) (defining

maintain as "[t]o keep up or carry on; continue").[7] We have, in interpreting other statutes, noted a difference between the words "maintain" and "bring." *See, e.g., Madera v. State Indus. Ins. Sys.*, 114 Nev. 253, 258-59, 956 P.2d 117, 120-21 (1998); *Nat'l Mines Co. v. Sixth Judicial Dist. Court*, 34 Nev. 67, 77-78, 116 P. 996, 1000 (1911). In *National Mines Co.*, we discussed a statute that conferred the right to "institute and maintain" an action. 34 Nev. at 77-78, 116 P. at 1000. Interpreting this language, we reasoned as follows:

> The word "maintain," as used frequently in statutes in reference to actions, comprehends the institution as well as the support of the action, and the statutes of this state contain many instances where it is used in this broader sense. It is used in other instances to express a meaning corresponding to its more restricted and more proper definition, . . . where [the term] [is] construed not to comprehend the institution of an action, but merely the support thereof. In [the statute] the two words are used together, "institute and maintain"; and hence both are used in their restricted sense.

*Id.* (citations omitted). Likewise, in *Madera*, we considered a statute that used the terms "'brought' or 'maintained,'" and we acknowledged that these terms sometimes convey similar meanings. 114 Nev. at 258, 956 P.2d at 120-21. Nevertheless, we concluded that the statute's use of "maintain" extended that statute "to pending matters," not just future matters. *See id.* at 258-59, 956 P.2d at 120-21. In so concluding, we reasoned that the Legislature's use of "maintain" alongside "brought" evidenced an intent to

---

[7]The definition of "maintain" in the versions of dictionaries at the time of the statute's passage in 1999 are identical to the definitions in the current editions. *See Maintain, Black's Law Dictionary* 965 (7th ed. 1999); *American Heritage Dictionary* 1084 (3d ed. 1996).

Supreme Court
of
Nevada

(O) 1947A

apply different meanings to the terms, such that the word "maintain" meant to continue or uphold an action, rather than to commence or institute it. *See id.* at 259, 956 P.2d at 121.

Like the statute in *Madera*, NRS 357.080 uses the terms "maintain" and "bring" at different points, indicating the Legislature's intent to distinguish the two terms rather than collapse them. *See generally* 2A Norman J. Singer & Shambie Singer, *Sutherland Statutes & Statutory Construction* § 46.6 (7th ed. 2007) [hereinafter *Sutherland*] ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible."). Nor does the ordinary meaning of "already" preclude giving independent meaning to "maintain," as the former term may, but does not always, convey succession. *See American Heritage Dictionary* 53 (5th ed. 2011) (defining "already" an adverb, as "[b]y this or a specified time," and noting that it functions as "an intensive" at times).[8] Moreover, it can simply apply to the time at which the motion to dismiss is made, at which point such a civil action is "already" pending.

Although the Legislature patterned the NFCA after federal legislation, it departed from the federal counterpart in substituting "maintain" for "bring." *Compare* 31 U.S.C. § 3730(e)(3) ("In no event may a person *bring* an action under [the act] . . . which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." (emphasis added)), *with* NRS 357.080(3)(b) ("An action may not be

---

[8]The 1992 edition of *American Heritage Dictionary* provides a similar definition of "already" as "[b]y this or a specified time; before," while also noting that "already" can be "[u]sed as an intensive." *See American Heritage Dictionary* 54 (3d ed. 1996). *Black's Law Dictionary* does not define "already."

*maintained* by a private plaintiff . . . [i]f the action is based upon allegations or transactions that are the subject of a civil action . . . to which the State or political subdivision is already a party." (emphasis added)). Generally, "[w]hen the Legislature adopts a statute substantially similar to a federal statute, 'a presumption arises that the [L]egislature knew and intended to adopt the construction placed on the federal statute by federal courts.'" *Int'l Game Tech.*, 122 Nev. at 153, 127 P.3d at 1103. Yet here, the Legislature rejected the federal FCA's sequencing language and the caselaw's construction of that language in its use of "maintain" as opposed to "bring." *Cf.* 2B *Sutherland, supra*, at § 52:5 ("[W]hen a legislature models a statute after a uniform act, but does not adopt particular language, courts conclude the omission was 'deliberate,' or 'intentional,' and that the legislature rejected a particular policy of the uniform act.").

Accordingly, then, the government-action bar in NRS 357.080(3)(b) contains no sequencing requirement, and it therefore may apply even where the qui-tam action precedes the State's or political subdivision's action,[9] because it precludes not just the bringing of a private suit but also the maintaining of one, conveying the continued pursuit thereof. While the district court erred in determining that NRS 357.080(3)(b) contains such a sequencing requirement, an issue remains as to whether the statute requires dismissal where the private and government suits concern the interests of different government entities.

---

[9]We note, however, that pursuant to NRS 357.080(2), only the Attorney General or their designee may assert claims pursuant to the NFCA in a government civil action when it is filed after the qui-tam action.

*NRS 357.080(3)(b) does not bar a qui-tam action on behalf of one governmental entity where the separate civil action has been brought by or on behalf of a different governmental entity, even if the two suits involve the same allegations or transactions*

Application of NRS 357.080(3)(b) requires comparison of two "actions": the first action is the one brought by a private plaintiff under NRS 357.080(1), and the second action, i.e., "a civil action," refers to the one to which "the State or political subdivision is already a party." Importantly, a disjunctive is used in the latter clause to describe the "civil action," signaling that the terms "the State" and "political subdivision" convey distinct meanings. *See United States v. Harris*, 838 F.3d 98, 105 (2d Cir. 2016) ("Established canons of statutory construction 'ordinarily suggest that terms connected by a disjunctive be given separate meanings.'" (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))). In authorizing the first action by a private plaintiff, the statute elsewhere maintains the disjunctive when referring to "the State" and "political subdivision." *See* NRS 357.080(1) ("[A] private plaintiff may bring an action pursuant to this chapter . . . on his or her own account and that of the State *or* a political subdivision, *or* both the State and a political subdivision." (emphases added)). Indeed, the NFCA confirms distinct meanings of "the State" and a "political subdivision," as the latter term is not defined as coextensive with the former term. *See* NRS 357.030 (defining "political subdivision" as including counties, cities, and "any other local government" entity).

Thus, when the government-action bar in subsection 3(b) refers to a "civil action" to which "*the* State or political subdivision is already a party" (emphasis added), it refers back to the specific State or political subdivision on whose account the private plaintiff has brought an action pursuant to subsection 1. *See* NRS 357.080(1) & (3); *see also American Heritage Dictionary* 1803 (5th ed. 2011) ("the," a definite article, used to

"denote particular, specified persons or things"). A contrary interpretation collapses "the State" and "political subdivision" into one entity, i.e., the "government," as any governmental entity's lawsuit premised on the same allegations or transactions would foreclose a private plaintiff from pursuing recovery on behalf of a distinct entity. While the government-action bar in the federal FCA refers to "the Government" as one entity, *see* 31 U.S.C. § 3730(e)(3), the plain language of the NFCA makes clear that a claim may be brought on behalf of either the State or a political subdivision, or both. Such an interpretation makes sense in light of the distinction between state governmental entities in other contexts. *Cf. Zebe v. County of Lander*, 112 Nev. 1482, 1484-85, 929 P.2d 927, 928-29 (1996) (concluding that because "each county, acting through its district attorney, has specific jurisdiction over acts conducted within its borders," one county does not bind a second county absent "the second county's [express] consent"); *Clark County v. Lewis*, 88 Nev. 354, 356-57, 498 P.2d 363, 365 (1972) (noting that "the county as a political subdivision has the power to compromise disputed claims or causes of action brought against it").

Applying this understanding to the undisputed facts, NRS 357.080(3)(b) does not require dismissal of relators' private action. Relators allege that OTCs engaged in a fraudulent scheme throughout the state to avoid transient-lodging tax obligations. According to the amended complaint, those transient-lodging taxes were assessed in Clark, Washoe, Douglas, Lyon, and Nye counties under their respective county codes and state law. However, relators seek recovery of the portion of the transient-lodging tax to which *the State*, not the respective county authorities, was entitled, and thus bring this case only on their own account and that of the State—not that of any political subdivisions. By contrast, the State is not

a party to the action brought by Clark County. Even assuming the actions involve the same allegations or transactions, the two governmental entities, and the claims pertaining to each, involved in the private action and the "civil action" remain distinct. Thus, regardless of which suit came first, NRS 357.080(3)(b) does not preclude relators from maintaining the present qui-tam action.

We also disagree with OTCs' assertion that failure to apply the government-action bar usurps legislative intent to ensure that government officials, rather than private parties, control governmental claims and encourages private parties to make law and policy decisions that affect governmental interests. The NFCA incentivizes private citizens to recover fraudulently obtained funds from violators on behalf of and for the benefit of the State or a political subdivision, while bearing the upfront financial and material burdens of litigation. *See, e.g.,* NRS 357.210(1)-(2) (permitting a private plaintiff to receive anywhere from 15 to 30 percent of a recovery, depending on whether the Attorney General or the Attorney General's designee intervened). Further, the Legislature has conferred control over false-claims litigation exclusively on the Attorney General, not, as OTCs suggest, on all state or local government officials. *See Simonian v. Univ. & Cmty. Coll. Sys. of Nev.,* 122 Nev. 187, 190, 128 P.3d 1057, 1059 ("Nevada's FCA permits *the Attorney General, or a private 'qui tam' plaintiff* acting on his own behalf and on that of the State, to maintain an action for treble damages against 'a person' who, among other things, presents a false claim for payment or approval . . . ." (emphasis added)). For example, the Legislature permits and mandates only the Attorney General or the Attorney General's designee to investigate alleged NFCA liability. NRS 357.070(1), (2). And a private plaintiff who files a qui-tam action must first

SUPREME COURT
OF
NEVADA

(O) 1947A

give the Attorney General the opportunity to intervene, regardless of whether the suit is brought on behalf of the State or a political subdivision, or both. *See* NRS 357.080(4)-(5); NRS 357.110(1).

If the Attorney General does intervene, the Attorney General takes over the litigation. *See, e.g.*, NRS 357.120(3) (giving the Attorney General the authority to settle the action). However, if the Attorney General declines to intervene, the private plaintiff assumes "the same rights in conducting the action as the Attorney General or the Attorney General's designee would have had." NRS 357.130(1). Even so, the private plaintiff must continue to provide the Attorney General with all pleadings associated with the matter. *Id.* Moreover, the Attorney General may nevertheless intervene even after initially declining to intervene. *See* NRS 357.130(2)-(3). While these various subsections emphasize the Attorney General's authority over false claims actions, they do not convey a general intent to ensure the government, as if it constitutes a single entity, maintains control or supervision over false claims litigated by private plaintiffs. Indeed, nowhere in NRS Chapter 357 does the NFCA authorize an independent local entity, such as Clark County, absent the Attorney General's designation, to intervene in or otherwise control a private suit to protect its interests.

Moreover, OTCs' focus on the substantial control given to the Attorney General ignores a crucial aspect of the NFCA that if the Attorney General declines to intervene in the private action, as occurred here, the Attorney General has in effect authorized the private plaintiffs to litigate as if they were the Attorney General. *See* NRS 357.130(1). Thus, a decision to decline to intervene also involves a degree of control by the Attorney General and, likewise, acknowledges that the private litigation of the

State's or a political subdivision's claims may proceed. Further, here, the Attorney General did not designate a county attorney to investigate and bring an NFCA claim related to Clark County's interests. In this respect, Clark County's suit, which includes no NFCA claim, is not directly implicated in relators' matter, as there is no overlap between the private plaintiffs' NFCA claim and the political subdivision's claims.

Finally, even in vesting the Attorney General with substantial control over false-claims litigation, the Legislature has also expressed a policy that the State and its political subdivisions benefit from the private pursuit of false-claims litigation. Indeed, private enforcement not only saves the State and political subdivisions from expending resources to pursue these claims but also results in positive returns to those entities. While, undoubtedly, some private plaintiffs pursue these claims out of a degree of self-interest, the Legislature has clearly endorsed financial incentives to encourage private plaintiffs to do so. *See* NRS 357.210(1)-(2) (allowing the private plaintiff to take a percentage of the ultimate recovery). Nor do these incentives harm the State or political subdivision, as they ultimately result in recovery to those entities and come out of the wrongdoer's pocket. Thus, consideration of the NFCA as a whole, along with its purpose, supports our interpretation of NRS 357.080(3)(b) as giving independent meaning to "the State" and "political subdivision."

## CONCLUSION

The government-action bar in NRS 357.080(3)(b) prevents a private plaintiff from maintaining a private NFCA action if the action is based on the same allegations or transactions that are subject to a civil action to which the State or a political subdivision is already a party. We hold that application of this provision precludes continuing an existing

SUPREME COURT
OF
NEVADA

(O) 1947A

20

NFCA case by a private plaintiff even if the government entity brings its civil action after the private case is initiated. However, we further conclude that the government-action bar applies only where the two at-issue suits involve the same governmental entity as a party. Such an interpretation preserves the Legislature's intent to differentiate between the terms "the State" and "a political subdivision" and acknowledges that the reference in NRS 357.080(3)(b) to "the State or political subdivision" means the entity that is a party to the private plaintiff's suit.

Furthermore, our interpretation also comports with the purpose of the NFCA as a whole to incentivize private plaintiffs to litigate instances of fraud against the State or a political subdivision to free up the respective governmental entities' resources for other purposes. Nor does such an interpretation interfere with the Attorney General's control over private NFCA suits, as the Attorney General has the right to intervene and use other procedural mechanisms to exercise a certain amount of control.

Applied here, NRS 357.080(3)(b) does not bar relators from maintaining the instant suit because, although the two at-issue actions may involve the same allegations or transactions to establish liability, relators' action is brought on behalf of the State and not on behalf of any political subdivisions, while Clark County's action is on behalf of itself and the State

SUPREME COURT
OF
NEVADA

(O) 1947A

is not a party thereto. Accordingly, we deny the OTCs' petition for writ relief.[10]

_____ Cadish _____, J.

We concur:

_____ Stiglich _____, C.J.

_____ Pickering _____, J.

_____ Herndon _____, J.

_____ Parraguirre _____, J.

_____

[10]The stay this court granted on August 18, 2022, is vacated, and the relators may proceed with their action in district court.

LEE, J., concurring:

While I concur in the result reached by the majority, I write separately to voice my disagreement with the majority's interpretation of NRS 357.080(3)(b).

The statute is admittedly ambiguous given its concurrent use of the words "maintain" and "already," which creates a contradiction that must be reconciled to give the statute effect. *See State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011) ("[W]hen 'the statutory language lends itself to two or more reasonable interpretations,' the statute is ambiguous, and we may then look beyond the statute in determining legislative intent." (quoting *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004))). I note that the majority's interpretation is not an unreasonable one. However, their interpretation of "already" as encompassing future events is strained.

NRS 357.080(3)(b) states, in pertinent part, that "[a]n action may not be *maintained* . . . [i]f the action is based upon allegations or transactions . . . [in a] proceeding . . . to which the State or political subdivision is *already* a party." (Emphases added.) "Already," as ordinarily used, means that something occurred prior to the idea it modifies. "Already" here simply means that the State or political subdivision must have been a party to the proceeding prior to the plaintiff's action. If the State or political subdivision's proceeding "already" existed prior to the plaintiff's action, then the action may not be maintained. Thus, there is a natural sequencing requirement in NRS 357.080(3).

In holding that the government-action bar does not import a sequencing requirement, the majority consults the legislative history of the statute and compares NRS 357.080(3)(b) with 31 U.S.C. § 3730(e)(3). Because Nevada's Legislature changed the word "bring" to "maintain," the majority asserts that the Legislature intended to reject any sequencing requirement. While this is not an unreasonable interpretation, one would have to turn a blind eye to the word "already," which in and of itself conveys sequencing.

I submit that the single word change from "bring" to "maintain" is not a clear indication of legislative intent. Instead, the use of "maintain" instead of "bring" has its ordinary meaning: even if the plaintiffs somehow managed to bring this action after a related proceeding, they may not continue the action if the State or political subdivision began the related proceeding prior to the plaintiff's action.

In addition to an assessment of legislative history when dealing with an ambiguous statute, we look to reason and public policy considerations to decipher legislative intent. *Lucero*, 127 Nev. at 95, 249 P.3d at 1228. ("To interpret an ambiguous statute, we look to the legislative history and construe the statute in a manner that is consistent with reason and public policy."). As a practical matter, it does not make sense to permit qui-tam actions, only for a political subdivision to swoop in at any time. It is not clear why any private plaintiff would take the risk of funding this form of litigation given the majority's interpretation. Recognition of the inherent sequencing set forth in the government-action bar promotes the legislative policy of incentivizing, encouraging, and enabling private plaintiff qui-tam actions.

But because the government-action bar is inapplicable in this matter for the reasons set forth in the majority's opinion, I concur with the remainder of the majority's opinion.

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A